MICHAEL J. HEYMAN
United States Attorney

E. BRYAN WILSON
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Bryan.Wilson@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAUNCH ALASKA,<br><br>      Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF THE NAVY,<br>OFFICE OF NAVAL RESEARCH,<br><br>      Defendant. | Case No. 3:25-cv-00141-GMS |

**DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF**

**INTRODUCTION**

  In this action, Plaintiff seeks an injunction under the Administrative Procedure Act (APA) 5 U.S.C. § 701 *et seq.* seeking to require Defendant Department of the Navy Office of Naval Research (ONR) to rescind its termination of grant funding to Plaintiff. As detailed below, this Court lacks jurisdiction over Plaintiff's claims. In *Department of Education v. California*, 145 S. Ct. 966, 968 (2025) (per curiam), the United States

Supreme Court found that claims of arbitrary grant termination must be brought as breach of contract actions under the Tucker Act (28 U.S.C. § 1491(a)(1)), not the APA. The United States Court of Federal Claims has exclusive jurisdiction over such actions. *Id.* Because Plaintiff is seeking relief under the wrong statute in the wrong court, the instant action must be dismissed.

Plaintiff's claims also fail when evaluated under the APA in that Plaintiff has an adequate alternative remedy in the Court of Federal Claims, decisions to discontinue grant funding are committed to the sound discretion of the Executive Branch and the decision here was not arbitrary or capricious. Likewise, Plaintiff has not met the remaining factors to obtain injunctive relief in that it cannot show irreparable harm.

## BACKGROUND

*President Trump is Inaugurated and Sets Policy Priorities*

On January 20, 2025, President Trump assumed the office of President of the United States. On that day, and in the weeks after, he issued a variety of Executive Orders setting new policy priorities for his administration.

Those Executive Orders focus on areas that the Federal Government funds. The President has identified cost-cutting as a key priority of his administration. He accordingly directed that "[e]ach Agency Head, in consultation with the agency's DOGE Team Lead, shall review all existing covered contracts and grants and, where appropriate and consistent with applicable law, terminate or modify (including through renegotiation) such covered contracts and grants to reduce overall Federal spending or reallocate spending to promote

efficiency and advance the policies of my Administration." *Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative*, Executive Order 14,222 ("EO 14,222") § 3(b), 90 Fed. Reg. 11,095 (Feb. 26, 2025).

All the orders make clear that they must be "implemented consistent with applicable law." *See* EO 14,151 § 4(b); EO 14,173 § 8(b); EO 14,168 § 8(b); EO 14,222 §§ 3(b), 5(b).

*The Grant Award and Termination Process*

The President having set new policy priorities, agencies with grantmaking authority began reviewing existing grants and considering next steps. The Federal Government, through various agencies, provides funding to various entities using contracts and grants that are subject to specified terms and conditions. As a default matter, Office of Management and Budget ("OMB") regulations generally govern a variety of terms for federal grants and contracts. *See generally* 2 C.F.R. Part 200 (titled "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards"). Usually, an agency will start with a notice of funding opportunity with eligibility information and details of what the agency wishes to fund. *See* 2 C.F.R. Part 200, App. I.

Subpart D of the OMB regulatory scheme is titled "Post Federal Award Requirements." It includes a variety of details for governing awarded grants. For example, 2 C.F.R. § 200.308 governs "[r]evision of budget and program plans" including details for "requesting approval for budget revisions," "review [of] the request for budget or program plan revision" by the relevant federal agency or pass-through entity, details of revision types, and other important guidelines. The regulations also reference and generally provide

terms for the termination of awarded federal grants. *See, e.g.*, *id.* § 200.309 ("If termination occurs, the period of performance will be amended to end upon the effective date of termination."); *id.* § 200.339(c) (noting suspension or termination is a remedy for noncompliance), *id.* § 200.343 (discussing the effects of suspension or termination).

Section 200.340, simply titled "Termination" provides the key substantive and procedural guidelines for termination of awarded grants. Crucially, the Federal Government has preserved the authority to terminate "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." *Id.* § 200.340 (emphasis added). This termination authority has been promulgated consistent with Congressional directives—delegating to OMB the power to manage various aspects of federal grants and contracts, including termination. *See* 31 U.S.C. § 503; *see also id.* § 6307. Awardees are accordingly informed that awards may be terminated based on changes in agency priorities.

Here, Plaintiff admits ONR's grant award contained an explicit term or condition stating that it was subject to termination for no longer effectuating program goals or agency priorities. Dkt. 1, ¶ 45, 46. In addition, the grant was terminated by a communication citing that term or condition. Dkt. 1, ¶ 48-51.

## ARGUMENT

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id.* at 20. Finally, when "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiff cannot satisfy these requirements.

## I.  THIS COURT LACKS JURISDICTION.

This Court lacks jurisdiction over this matter because Congress has specifically divested federal courts of jurisdiction over matters like this one. In challenging ONR's grant termination, Plaintiff seeks an order to enforce the Government's contractual obligation to pay. Specifically, Plaintiff asks for the restoration of funding under existing awards. Dkt. 1, p. 16. Plaintiff's claim is founded on maintaining parts of the contract, disabling the termination provisions, and requiring the continued disbursement of funds. In short, Plaintiff is asking for specific performance of contractual agreements.

The relief sought by Plaintiff triggers jurisdiction in the Court of Federal Claims under the Tucker Act, which provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Tucker Act precludes relief under the APA or otherwise because the APA's waiver of sovereign immunity is limited to claims "seeking relief other than money damages," 5

U.S.C. § 702, and the APA does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,'" *California*, 145 S. Ct. at 968 (*quoting* 5 U.S.C. § 702). This exception "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

Moreover, Congress has by statute explicitly forbidden district court jurisdiction for such claims. 28 U.S.C. § 1346(a)(2) ("[T]he district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States [unless it is for less than $10,000]."). In sum, by statute and by the United States' sovereign immunity, if this action is founded upon a contract with the United States, this Court must dismiss for lack of jurisdiction.

Determining whether "a particular action" is "at its essence a contract action" not within the jurisdiction of the district courts, requires looking at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (applying *Megapulse*). Both prongs point toward a lack of district court jurisdiction.

First, the source of the rights Plaintiff asserts is the grant agreement itself. "Because the United States's obligation is in the first instance dependent on the contract, these claims are contractually-based" and "the district court lacks jurisdiction under the Tucker Act." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998)

(concluding that district court lacked jurisdiction under the Tucker Act over constitutional claim because it was contractually based). In other words, "it is likely that no cause of action would exist at all," in the absence of the contracts. *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 377 (2d Cir. 1999). That Plaintiff's claims could not "exist[] prior to and apart from rights created under the [agreements]" weighs sharply against district court jurisdiction. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)*; see also Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1385-86 (Fed. Cir. 2001) (directing court to transfer case asserting constitutional, including due process, claims to the Court of Federal Claims in a case sounding in contract).

Second, the relief prong of the test weighs sharply against jurisdiction. Indeed, the Supreme Court recently explained that the type of relief sought here is in the heartland of the Tucker Act's bar. In *Department of Education v. California*, several plaintiffs brought a similar APA challenge to termination of federal grants related to DEI. 145 S. Ct. at 968. The Court concluded that the lower court likely lacked jurisdiction because the remedy sought was ultimately an order to "enforce [the Government's] contractual obligation to pay money." *Id.* (*quoting Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). In *California,* the Court identified the contractual grant award, considered the remedy sought, and concluded jurisdiction was likely precluded. *Id.*

Plaintiff's relief can fare no better than the *California* plaintiffs' request. The claim is founded, by definition, on a contract with the United States, and the relief sought is to preserve certain contractual terms and enforce specific performance. The Tucker Act

"specifically bar[s] . . . any 'injunctive, mandatory or declaratory relief against government officials when the result would be the equivalent of obtaining of money damages'" and Plaintiffs' claims are accordingly outside this Court's jurisdiction. *See Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 143 (2d Cir. 1999).

After *California*, the Fourth Circuit recently stayed a district court injunction effectively identical to the one sought here. *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025). Plaintiffs there brought APA and ultra vires constitutional claims against Federal defendants and by virtue of those purported legal infirmities sought to reverse or prevent grant terminations. *Id.* Looking to *California*, the Fourth Circuit easily concluded that those defendants were likely to succeed in showing that the district court lacked jurisdiction. "While the appropriation statutes authorize the agencies to award grants, it is the operative grant agreements which entitle any particular Plaintiff to receive federal funds." *Id.* The same is true here. *See also, Child Trends, Inc. v. Dep't Education*, No. 25-cv-1154-BAH, 2025 WL 1651148, at *7 (D. Md. June 11, 2025) (rejecting motion for preliminary injunction where "Plaintiffs br[ought] claims under the APA, as well as non-statutory claims seeking equitable relief" because of Tucker Act preclusion).

In seeking an injunction to maintain payments pursuant to the schedule in a contract with the United States, Plaintiff wants ONR "to keep paying up." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025). Because the claims

here are founded upon a contract they must be heard in Claims Court. *Id.* at 163-4. ("The Court squints in vain to see any daylight. Like those plaintiffs, the Conference asks the Court to order the Government to cancel the termination, pay money due, and reinstate the contracts. That is something this Court lacks the power to do.") Granting Plaintiff's request would amount to an order to "enforce [the Government's] contractual obligation to pay money." *California*, 145 S. Ct. at 968, and cannot move forward. This Court lacks jurisdiction over this challenge in full.

## II. PLAINTIFF'S CLAIM FAILS UNDER THE APA AS WELL.

### A. Plaintiff's APA Claim is Foreclosed

Even if this Court concludes that Plaintiff's claim is not precluded by the Tucker Act, the APA claims fail at the threshold and on the merits in that 1) Plaintiff does not challenge discrete final agency action; 2) the allocation of appropriations is committed to agency discretion by law; 3) ONR's actions were consistent with all applicable law; and 4) ONR not act arbitrarily or capriciously.

#### i. *No Final Agency Action*

"[F]inal agency action" is a requirement for APA review. 5 U.S.C. § 704. Agency action requires a specific "rule, order, license, sanction, relief, or the equivalent." *Id.* § 551(13). It must be a "discrete" act, and a plaintiff may not bring a "broad programmatic attack." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The Supreme Court has laid out a two-part test for finality: 1) "the action must mark the 'consummation' of the agency's decision-making process," rather than being "of a merely tentative or

interlocutory nature"; and (2) "the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704.

Plaintiff's APA claim, challenging current or future grant terminations is definitionally a broad programmatic attack not based on the consummation of ONR's decision-making process. While this termination may eventually represent a final agency action, a plaintiff may not "in a single swipe at the duly elected executive" seek judicial superintendence over the entire grantmaking structure of the Executive Branch. *See Louisiana v. Biden*, 64 F.4th 674, 684 (5th Cir. 2023). Indeed, by Congressional ordering, the APA does not permit Plaintiffs to "seek *wholesale* improvement" of agency management "by court decree"—even in the face of allegations of "rampant" violations of law. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). "Because 'an on-going program or policy is not in itself, a "final agency action" under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006). "Consequently, as each case only presents the court with a narrow question to resolve, [the court] can have no occasion to order wholesale reform." *Id.*

Nor does it matter that the President has set policy directives that may flow to agencies. The Supreme Court has consistently held that "the President is not an 'agency' under that A[PA]." *Dalton v. Spector*, 511 U.S. 462, 476 (1994). As a result, the APA,

making "final *agency* action for which there is no other adequate remedy in a court subject to judicial review," is inapplicable to the President. 5 U.S.C. § 704 (emphasis added). This conclusion flows from "respect for the separation of powers and the unique constitutional position of the President." *Franklin v. Massachusetts,* 505 U.S. 788, 800–01 (1992). Indeed, the Court in *Franklin* directly confronted what would happen if a statute invested the President with the authority to take an administrative action and concluded that the action was simply not subject to the requirements in the APA. *Id.* at 800–01. As a result, it is only the discrete final actions of agencies, not broad programmatic Presidential prerogatives, which are properly subject to APA review.

Accordingly, the Court should reject Plaintiff's APA challenge as being beyond the bounds Congress has set out for such review.

### ii. Committed to Agency Discretion by Law

Withdrawal of funding is quintessential agency action "committed to agency discretion by law," for which the APA does not provide an avenue for review. 5 U.S.C. § 701(a)(2). While the APA establishes a waiver of sovereign immunity and a cause of action for injunctive relief for parties adversely affected by either final agency action or an agency's failure to act, 5 U.S.C. §§ 702, 706(1)-(2), the waiver of sovereign immunity is limited. It does not apply in circumstances where "agency action is committed to agency discretion by law," id. § 701(a)(2). Review under the APA therefore is unavailable "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

Although, where the statute does not provide any judicially manageable standard, "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review." *Ctr. for Auto Safety v. Dole,* 846 F.2d 1532, 1534 (D.C. Cir. 1988).

The Supreme Court has long recognized that an agency's determination of how to allocate appropriated funds among competing priorities and recipients—precisely what Plaintiffs challenge here—is classic discretionary agency action. *See Lincoln* v. *Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Court explained that there is no waiver of sovereign immunity where agency action requires "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including whether "resources are best spent on one program or another; whether it is likely to succeed in fulfilling its statutory mandate; whether a particular program best fits the agency's overall policies; and, indeed, whether the agency has enough resources to fund a program at all." *Id*. An "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* The APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Id.*

Moreover, Courts have made clear that *Lincoln*'s logic extends to funding programs that leave to the agency "the decision about how the moneys" for a particular program "could best be distributed consistent with" the statute. *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002). Such decisions—like decisions regarding how best to allocate lump-sum appropriations—" clearly require[] a complicated balancing of a

number of factors which are peculiarly within [the agency's] expertise." *Id.* at 752; *see also Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018).

Statutory language that empowers the agency head in such a manner "fairly exudes deference to the" agency head. *See Webster v. Doe*, 486 U.S. 592, 600 (1988). And statutory language giving an agency "discretion" to act creates no law to apply. *See, e.g.*, *Forsyth Cnty. v. Army Corp. of Eng'rs*, 633 F.3d 1032, 1041 (11th Cir. 2011).

In sum, ONR had broad discretion to set funding priorities and determine whether and when to exercise contractual rights to terminate grant agreements. ONR's exercise of that discretion is not reviewable.

### iii. Arbitrary and Capricious Review

Even if the Court applies arbitrary and capricious review, the challenged termination survives. Under the arbitrary and capricious standard, the agency's decision is presumed valid, and a court reviews only whether that decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). A court must "uphold [even] a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (quotation marks omitted).

An agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one." *Id.* at 515. Rather, "it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Id.* Moreover, the judiciary affords a particularly lenient standard of review to agency action in the contracting context. *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) ("[D]etermining an agency's minimum needs is a matter within the broad discretion of agency officials . . . and is not for [the] court to second guess."); *cf. Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 260-61 (Fed. Cl. 2016) ("Effective contracting demands broad discretion" so contracting decisions are subject to a "highly deferential rational basis review.").

In conformity with 2 C.F.R. § 200.340, and the individual terms and conditions of the award cited by Plaintiff, an agency may generally terminate a federal award "if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). In addition, 2 C.F.R. § 200.341(a) requires an agency to "provide written notice of termination to the recipient or subrecipient," and include in that notice "the reasons for termination, the effective date, and the portion of the Federal award to be terminated." The grant at issue here was terminated pursuant to recognized termination authorities and in compliance with the terms permitting such terminations. Given that "reasonableness is a zone, not a pinpoint," *Wis. Pub. Power, Inc. v. FERC*, 493 F.3d 239, 266 (D.C. Cir. 2007) (per curiam), the APA does not require ONR to maintain grants that

no longer effectuates its priorities. *See, e.g.*, *Mobil Oil Expl. & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 230 (1991) ("An agency enjoys broad discretion in determining how best to handle related, yet discrete, issues in terms of procedures, and priorities[.]").

Moreover, the decision to terminate was "reasonable and reasonably explained." *Prometheus Radio Project*, 592 U.S. at 423. In its notice, ONR explained that the grant "no longer effectuates the program goals or agency priorities as set forth in SECDEF MEMO dated March 20, 2025." Dkt. 1, Ex. 5. That is well within the bounds of reasonable explanation. And it is exceedingly unlikely that anyone has a reliance interest in continued discretionary funding. *Tennessee v. Becerra*, 131 F.4th 350, 370 (6th Cir. 2025) ("Tennessee likely has no legally cognizable reliance interest in the receipt of a discretionary funding award on the conditions that it prefers." (emphasis removed)). Therefore, no reliance interests can defeat the ONR's termination.

In sum, arbitrary and capricious review of agency policy priorities and reasons is deferential because it "represents a substantial intrusion into the workings of another branch of Government." *See Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019). This termination satisfied its strictures. The Court should accordingly reject Plaintiffs' arbitrary and capricious claim.

### III. PLAINTIFF FAILS TO SHOW IRREPARABLE HARM ABSENT AN INJUNCTION

In addition to a lack of success on the merits, Plaintiff is not entitled to a preliminary injunction because it cannot establish that it will be irreparably harmed before final judgment absent a preliminary injunction. To show irreparable harm, Plaintiff must meet a "high standard" and show that it faces injuries that are "certain, great, actual, and imminent," *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008), and "beyond remediation.," *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Id.* at 297–98 (*quoting Wis. Gas Co. v. Fed. Energy Regul. Co*., 758 F.2d 669, 674 (D.C. Cir. 1985)).

As explained above, this case is about funding. Plaintiff's irreparable harm arguments largely focus on interim harms it will experience based on a lack of funding—exploring and drawing on other funding sources, considering staff layoffs, and shutting down or suspending certain programs. Dkt. 1, ¶ 61-69.

When assessing irreparable harm, the claimed injury must be "certain," and "actual not theoretical." *Wis. Gas Co.,* 758 F.2d at 674. Indeed, "the threatened injury must be of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm, because injunctions are not intended to prevent injuries neither extant nor

presently threatened, but only merely feared." *St. Croix Chippewa Indians of Wis. v. Kempthorne*, 535 F. Supp. 2d 33, 36 (D.D.C. 2008). Furthermore, the irreparable harms pled must be harms to the Plaintiffs, not third parties. "[H]arm that might befall unnamed third parties does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court." *New Mexico v. Musk*, 769 F. Supp. 3d 1, 7 (D.D.C. 2025) (*quoting Church v. Biden*, 573 F. Supp. 3d 118, 146 (D.D.C. 2021)).

Moreover, because recovery against the Government on improperly terminated contracts is available in appropriate actions in the Court of Federal Claims, this is not an instance in which sovereign immunity leaves Government funds unrecoverable. In *Department of Education*, the Supreme Court held it was appropriate to stay a temporary restraining order enjoining the Government from terminating various education-related grants, reasoning that "if [the grantees] ultimately prevail, they can recover any wrongfully withheld funds through suit in an appropriate forum." 145 S. Ct. at 969. The same rationale applies to this case.

### IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST DISFAVOR INJUNCTIVE RELIEF

The Supreme Court's decision in *Department of Education* underscores why the remaining injunction factors tip in Defendants' favor. As that order noted, the harm ONR would face if the Court were to reinstate the grant award contracts pending final resolution of the case—which is what Plaintiffs effectively demand—would be irreparable given that ONR would be "unlikely to recover the grant funds once they are disbursed." 145 S. Ct. at

969. The public also has an interest in the judiciary respecting the Executive Branch's ability to lawfully direct and guide agencies' spending decisions, and, in particular, ensuring that tax dollars are allocated to grant programs that most effectively advance the priorities of the Executive Branch.

Moreover, the scope of injunctive relief that the Court can grant here is limited by separation of powers principles. Even where jurisdiction is proper, a court cannot "specifically order" the federal Government "to continue to contract" with specific parties, as such relief would undermine the "Executive discretion" that "both the Constitution and Congress's laws have traditionally afforded" with respect to "how to spend" appropriated funds "within the constraints set by Congress." *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State,* 770 F.Supp. 3d 121, 154 (D.D.C. 2025). "The relief" that Plaintiffs request—namely, "reinstatement of contracts terminated by the Government"—is "beyond the power of this Court." *Cath. Bishops*, 770 F.Supp.3d at 165.

## CONCLUSION

For these reasons, this Court should dismiss Plaintiff's Motion for a Preliminary Injunction.

RESPECTFULLY SUBMITTED this July 21, 2025, in Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

/s/ E. Bryan Wilson
Assistant U. S. Attorney
United States of America

**CERTIFICATE OF SERVICE**
I hereby certify that on July 21, 2025,
a true and correct copy of the foregoing
was served electronically on the following:

John R. Crone
Gordon Rees Scully Mansukhani, LLP
jcrone@grsm.com
*Attorney for Plaintiff*


/s/ E. Bryan Wilson
Office of the U.S. Attorney

*Launch Alaska v. Dep't of the Navy, Office of Naval Research*     Page 19 of 19
Case No. 3:25-cv-00141-GMS

Case 3:25-cv-00141-GMS     Document 15     Filed 07/21/25     Page 19 of 19