**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAUNCH ALASKA,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF THE NAVY, OFFICE OF NAVAL RESEARCH,<br><br>Defendant. | Case No. 3:25-cv-00141-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Department of the Navy, Office of Naval Research's Motion to Dismiss (Doc. 15) and Plaintiff Launch Alaska's Motion for Preliminary Injunction (Doc. 8). For the reasons below, the Motion to Dismiss (Doc. 15) is denied and the Motion for Preliminary Injunction (Doc. 8) is granted.

## BACKGROUND

Plaintiff Launch Alaska ("Launch Alaska") is an Alaska nonprofit corporation that aims to "spur innovation, develop and scale infrastructure and energy technology solutions, and support deployment of these ideas and technologies in challenging environments." (Doc. 1 at 2). In September 2022, Defendant Department of the Navy, Office of Naval Research ("ONR"), awarded Launch Alaska a grant of $4,999,860, to be paid out from October 1, 2022 through September 30, 2027. (Doc. 1 at 8). ONR twice modified the grant to reflect incremental payments made to Launch Alaska: first, on March 30, 2023, reflecting a payment of $1,000,000, and second, on November 24, 2023, reflecting a payment of $2,999,860. (Doc. 1 at 9). As part of the grant modification on November 24,

ONR revised the Terms and Conditions to include language that permits ONR to unilaterally terminate the grant if "the award no longer effectuates the program goals or agency priorities." (Doc. 1 at 9).

On April 30, 2025, an ONR grants officer notified Launch Alaska that its grant was terminated, "as it no longer effectuates the program goals or agency priorities as set forth in SECDEF MEMO dated March 20, 2025." (Doc. 1 at 10; Doc. 1-5 at 1). On May 1, 2025, Launch Alaska filed a Notice of Claim or Appeal pursuant to DoD R&R General Terms and Conditions. (Doc. 1 at 11; Doc. 1-7). Launch Alaska asserted that because the Notice of Termination failed to provide any information as to how or why the grant no longer effectuated program goals or agency priorities, the termination violated federal regulation governing the termination of federal awards, 2 C.F.R. §§ 200.340(a)(4), 200.341(a), and the Administrative Procedure Act ("APA"). (Doc. 1 at 11; Doc. 1-7).

On June 12, 2025, the Grant Appeal Authority issued a final administrative decision, declining to rescind ONR's termination of the grant. (Doc. 1 at 11-12; Doc. 1-8). The Appeal Authority reasoned that the APA does not apply to the termination of Launch Alaska's grant and that the grant officer's reason for termination was sufficient to comply with federal regulation. (Doc. 1-8 at 3).

On July 3, 2025, Launch Alaska filed a Motion for Preliminary Injunction against ONR, asking this Court to order ONR to rescind its termination of the grant award. (Doc. 8 at 16). ONR filed a Motion to Dismiss on July 21, 2025. (Doc. 15). The Court held a hearing on the motions on August 1, 2025. For the following reasons, the Court denies ONR's Motion to Dismiss (Doc. 15) and grants Launch Alaska's Motion for Preliminary Injunction (Doc. 8).

**ONR'S MOTION TO DISMISS**

I. **Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) requires the Court to dismiss an action if the Court lacks subject matter jurisdiction over the suit. Fed. R. Civ. P. 12(b)(1). When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court takes as

true the material facts alleged in the complaint. *See Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005). The Court may also consider affidavits or any other evidence necessary to resolve any factual disputes concerning the existence of jurisdiction. *Colwell v. Dep't of Health and Hum. Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). If a defendant attacks the existence of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction exists. *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

## II.     Discussion

ONR moves to dismiss for lack of jurisdiction. (Doc. 15 at 2). Relying on *Department of Education v. California*, 145 S. Ct. 996 (2025), ONR asserts that because Launch Alaska asks the Court to order ONR to pay Launch Alaska pursuant to contractual agreements between Launch Alaska and the federal government, the case must be heard in the Court of Federal Claims under the Tucker Act. (Doc. 15 at 5).

The Tucker Act grants the United States Court of Federal Claims original jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." *Grondal v. United States*, 37 F.4th 610, 619 (9th Cir. 2022) (quoting 28 U.S.C. § 1491(a)(1)). The Court of Federal Claims has exclusive jurisdiction over claims for more than $10,000 in damages against the United States. *Id.* However, "[g]enerally speaking, the Tucker Act does not permit the Court of Federal Claims to grant equitable or declaratory relief, . . . [and due] to this limited remedial authority, a contract-based action falls within the scope of the Tucker Act only if the plaintiff seeks money damages for the breach of a government contract." *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023). Further, "the Tucker Act yields . . . when the Administrative Procedure Act provides an avenue for relief." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323-24 (2020).

In recent cases, "courts have considered claims challenging the termination of grants, presenting questions about whether the claims are properly asserted under the [Administrative Procedure Act ("APA")] in federal district courts or must proceed in the

Court of Federal Claims under the Tucker Act." *American Gateways, et al., v. U.S. Dept. of Just., et al.*, No. 25-01370, 2025 WL 2029764, at *6 (D.D.C. July 21, 2025) ((citing *Harris Cnty. v. Kennedy*, No. 25-cv-1275, 2025 WL 1707665, at *12-14 (D.D.C. June 17, 2025) (collecting cases that "have grappled with whether the Tucker Act divests district courts of jurisdiction in a raft of grant-termination cases")). Because in many of these cases "plaintiffs' challenges and claims for relief have entailed the reinstatement of particular grant instruments—contracts—courts have had to consider whether the claim at issue is, in fact, a challenge to agency policy (and therefore properly reviewed under the APA) or is 'at its essence contractual' (in which case, the Tucker Act requires that the claim proceed through the Court of Federal Claims)." *Id.* (quoting *Crowley Gov't Servs. v. GSA*, 38 F.4th 1099, 1102 (D.C. Cir. 2022)).

The Ninth Circuit relies on a two-part test, derived from the D.C. Circuit's decision in *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982), to determine whether an APA action seeking injunctive relief is "a disguised breach-of-contract claim" that must be heard in the Court of Federal Claims. *United Aeronautical Corp.*, 80 F.4th at 1026 (9th Cir. 2023) (citing *Megapulse, Inc.*, 672 F.2d at 968). The test requires that the court look to "(1) the source of the rights upon which the plaintiff bases its claims and (2) the type of relief sought (or appropriate)." *Id.*

### a. Source of the Rights

As to the first prong, "[i]f rights and remedies are statutorily or constitutionally based, then district courts have jurisdiction; if rights and remedies are contractually based then only the Court of Federal Claims [has jurisdiction]." *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health and Hum. Servs.*, 137 F.4th 932, 937-38 (9th Cir. 2025) (quoting *United Aeronautical Corp.*, 80 F.4th at 1026). "The Tucker Act does not bar an APA action if the plaintiff's rights and remedies, as alleged, are noncontractual—even if it is inevitable that the government will raise a contract provision as a defense." *United Aeronautical Corp*, 80 F.4th at 1026. Here, Launch Alaska seeks to enforce compliance

with the APA—federal regulation and statute, not a government contract.[1] (*See* Doc. 8-6 at 2) ("It is Launch Alaska's position that the Notice of Termination therefore fails to comply with 2 C.F.R. §§ 200.340(a)(4) and 200.341(a). Failure to identify proper reasons for termination of the Award also violates the Administrative Procedure Act.").

As ONR, itself, explained in its administrative decision on Launch Alaska's appeal, "Launch Alaska asserts that the manner by which ONR terminated the grant violated the Administrative Procedures Act, 5 U.S.C. § 706(2)(A) (APA), and that ONR did not comply with the notice requirements of 2 C.F.R. § 200.341(a)." (Doc. 8-7 at 3). The source of this claim does not arise in a contract, but instead in the APA's provisions forbidding arbitrary and capricious action. *See Colorado v. U.S. Dep't of Health and Hum. Servs.*, No. 1:25-cv-00121, 2025 WL 1426226, at *8 (D.R.I. May 16, 2025) (source of the States's rights to seek injunctive relief against HHS for grants terminated in violation of the APA turns on federal statutes and regulations put in place by Congress and HHS); *see also Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, No. 1:25-cv-00097, 2025 WL 1116157, at *13 (D.R.I. April 15, 2025) (source of nonprofits' rights to seek injunctive relief against agencies for freezing grant funds in violation of the APA is federal law rather than contract law). As an illustration of this, ONR's Grant Appeal Authority examined the text of federal regulation § 200.341(a), not the terms of the grant, to determine whether the grant officer's termination notice of Launch Alaska's grant was sufficient.[2] ONR's briefing of Launch Alaska's APA claim further illustrates this point. (*See* Doc. 15 at 13-15). To assert that the grant awarded to Launch Alaska was "terminated pursuant to recognized termination authorities and in compliance with the terms permitting such terminations," ONR relied on 2 C.F.R. § 300.340(a)—federal regulation that governs the termination of federal awards. (*See id.*).

---

[1] "Regulations, properly promulgated, have the force and effect of law." *Sager v. McHugh*, 942 F.Supp.2d 1137, 1142 n.1 (W.D. Wash. 2013) (citing *United States v. Nixon*, 418 U.S. 683, 695 (1974)).

[2] The Grant Appeal Authority did not substantively consider Launch Alaska's APA claims because it held that the appeal "is in substance akin to a claim that the government unreasonably terminated a procurement contract for the government's convenience, which would be a matter under the Contract Disputes Act (CDA)" in the Court of Federal Claims. (Doc. 8-7 at 3) (citing *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025)).

Of course, the grant necessitates an underlying contractual relationship between Launch Alaska and ONR. "But the mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action based on [statute] into one on the contract and deprive the court of jurisdiction it might otherwise have." *Megapulse, Inc.*, 672 F.2d at 968; *see Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1083-84 (10th Cir. 2006) ("[L]itigants may bring statutory and constitutional claims in federal district court even when the claims depend on the existence and terms of a contract with the government.").

### b. Type of Relief Sought

As to the second prong, "[i]f the relief sought is 'akin to the traditional remedies available for breach of contract (damages or specific performance),' the Tucker Act applies, and Plaintiffs' claims belong in the Court of Federal Claims." *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-cv-814, 2025 WL 1582368, at *10 (W.D. Wash. June 3, 2025) (quoting *United Aeronautical Corp.*, 80 F.4th at 1026). However, the "fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). A court's order "for the payment of money must not be confused with the question whether such payment, in these circumstances, is a payment of money as damages or as specific relief." *Id.* at 900.

Here, Launch Alaska asks the Court to order ONR to rescind its termination of the grant because ONR failed to apply proper procedure under the APA; in other words, Launch Alaska asks the Court to set aside the termination until the government reconsiders the termination in the appropriate manner. (Doc. 8 at 16). This is a request for specific relief and beyond the jurisdiction of the Court of Federal Claims. *See Bowen*, 487 U.S. at 910 (holding that orders for specific relief rather than for money damages are within the District Court's jurisdiction under § 702's waiver of sovereign immunity). As Launch Alaska asserts, the requested relief would prevent ONR from terminating Launch Alaska's grant "for the unlawful reasons challenged in this lawsuit." (Doc. 17 at 15). "An order

vacating the termination on [the basis that the government failed to follow its own procedures]—together with an order requiring the government not to commit those procedural violations again—would leave the government free to reconsider the termination so long as it does so in a procedurally appropriate manner." *Porwancher v. Nat'l Endowment of the Humans.*, 2025 WL 2097740, at *4 (D.D.C. July 25, 2025).

### c. *Department of Education v. California*

ONR argues that the U.S. Supreme Court's recent stay order in *Department of Education v. California*, 604 S. Ct. 996 (2025), necessitates that Launch Alaska's claims be brought in Federal Claims Court. (Doc. 15 at 7-9). Indeed, on a similar set of facts, the Supreme Court stayed a district court's temporary restraining order "enjoining the Government from terminating various education-related grants . . . [and] requir[ing] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue" because "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *California*, 604 S. Ct. at 968.

As an initial matter, Launch Alaska does not ask the Court to order ONR to pay out past-due grant obligations or to make a payment. Rather, Launch Alaska asks the Court to enjoin the termination of the grant award, which Launch Alaska asserts was terminated in violation of the APA. Launch Alaska acknowledges that, even under such an injunction, ONR would continue to have the right to terminate Launch Alaska's grant, if it did so following mandated procedures. Thus, Launch Alaska's request is not necessarily one for money. And, in any event, as the Supreme Court affirmed in *California*, "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." 604 S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 910).

Unresolved, in the wake of *California*, is when a district court's order to enjoin the termination of a grant award is an order to set aside potentially unlawful agency action or is an order "'to enforce a contractual obligation to pay money.'" *See California*, 604 S. Ct.

- 7 -
Case 3:25-cv-00141-GMS    Document 20    Filed 08/05/25    Page 7 of 15

at 968 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). A distinction between *California* and *Bowen* is that "*Bowen* involved a statutory grant of Medicaid funds made by Congress, rather than grant agreements made with executive-branch agencies." *Harris Cnty., Tex. v. Kennedy*, No. 25-cv-1275, 2025 WL 1707665, at *15 (D.D.C. June 17, 2025). However, "[p]erhaps that distinction should not be legally significant, [as] the Supreme Court has repeatedly characterized Spending Clause legislation like Medicaid as much in the nature of a contract." *Id.* (citations omitted) (cleaned up).

The Court "is not positioned to disregard *Bowen* and its progeny, even if it appears that it is now in tension with *California*." *Colorado*, 2025 WL 1426226, at *9 (*citing Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (explaining that district courts "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.")). "[This] is true even if the lower court 'thinks the precedent is in tension with some other line of decisions'—or here, rather than an entire competing 'line of decisions,' a single three-page *per curiam* order granting a stay." *Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *15 (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) ("The stay will allow this Court to decide the merits in an orderly fashion—after full briefing, oral argument, and our usual extensive internal deliberations—and ensure that we do not have to decide the merits on the emergency docket. To reiterate: The Court's stay order is not a decision on the merits.")).

"Absent clear guidance from the Supreme Court that *Bowen* and its progeny are no longer good law, the Court follows [] well-established precedent in concluding the APA has waived the United States' sovereign immunity on this case . . . inclusive of the fact that, in the event the Plaintiff prevails, the requested [injunction] will likely result in monetary payments." *Maine v. U.S. Dept. of Agric.*, No. 1:25-cv-00131, 2025 WL 1088946, at *19 n.8 (D. Maine April 11, 2025).

For the reasons stated above, this Court has jurisdiction pursuant to *Bowen*, 487 U.S.

- 8 -
Case 3:25-cv-00141-GMS     Document 20     Filed 08/05/25     Page 8 of 15

879, and its progeny, and ONR does not raise additional grounds for dismissal. As such, ONR's Motion to Dismiss (Doc. 15) is denied.

## LAUNCH ALASKA'S MOTION FOR PRELIMINARY INJUCTION

### I. Legal Standard for Injunctive Relief

"A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) [it] is likely to succeed on the merits; (2) [it] is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in [its] favor; and (4) an injunction is in the public interest." *Patel-Hasmukhbhai v. Barr*, No. CV-20-01121, 2020 WL 13544980, at *2 (D. Ariz. June 8, 2020) (citing *Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008)). When the government is the opposing party, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The movant must make "a certain threshold showing . . . on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

### II. Analysis

#### a. Likelihood of Success on the Merits

##### i. Jurisdiction

As an initial matter, Launch Alaska is likely to succeed in establishing that the Court has jurisdiction over its claim. ONR argues that Launch Alaska's APA claim is foreclosed because Launch Alaska is not challenging a final agency action. (Doc. 15 at 9). Indeed, the final agency action requirement, 5 U.S.C. § 704, has been treated as jurisdictional in the Ninth Circuit. *S.F. Herring Ass'n v. Dept. of the Interior*, 946 F.3d 564, 571 (9th Cir. 2019).

Two conditions must be satisfied for agency action to be final under the APA: first, "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and second, "the action must be one by which rights or obligations have been determined, or from which legal

Case 3:25-cv-00141-GMS   Document 20   Filed 08/05/25   Page 9 of 15

consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotations omitted). ONR's "Decision on Appeal of Termination of Grant N00014-22-1-2844 to Launch Alaska" was a final agency action under the APA. (Doc. 8-7). As to the first condition, ONR's Decision on Appeal "marks the consummation of the agency's decisionmaking process," *see Bennett*, 520 U.S. at 177-78, as it was "the Grant Appeal Authority's final administrative decision . . . and [could] not be further appealed within DoD." (Doc. 8-7 at 4). The second prong is satisfied when the nature of the administrative action "gives rise to direct and appreciable legal consequences." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 598 (2016). As a direct consequence of the termination letter and ONR's Decision on Appeal, ONR will not fund the remainder of its grant to Launch Alaksa. Accordingly, the grant termination was likely a final agency action for the purposes of the APA.

### ii. Agency Discretion

ONR argues that this Court has no authority to review ONR's termination of the grant because an agency's determination of how to allocate appropriated funds is unreviewable, discretionary agency action. (Doc. 15 at 12) (citing *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993)). However, ONR misstates the issue before the Court. The Court is not reviewing whether the grant continues to effectuate ONR's goals or agency priorities. Rather, the issue before the Court is whether ONR followed the requirements of 2 C.F.R. § 200.340 and § 200.341, or whether ONR's termination was arbitrary and capricious. At oral argument, counsel for ONR testified that it terminated one grant, terminated one grantee, and offered a single reason for that termination. This is not, in fact, what ONR did. In the only notice Launch Alaska received, ONR terminated the grant pursuant to a Secretary of Defense memorandum, which discussed presumably many unidentified grants to terminate for many listed reasons. (Doc. 8-5 at 1). Further, during oral argument, counsel for ONR testified that Launch Alaska's grant was terminated for fraud, waste, abuse, and/or the need to cut back. Although federal regulation does not require much explanation for why a grant no longer effectuates agency goals or priorities, it requires

- 10 -

Case 3:25-cv-00141-GMS  Document 20  Filed 08/05/25  Page 10 of 15

more than a generic, litany of reasons which may or may not apply to any number of grant terminations which are not specified, but all of which presumably are encompassed in the same memorandum. In these circumstances, such a termination is arbitrary and capricious as it applies to Launch Alaska and fails to comply with regulatory requirements. Because this is not a review of why ONR terminated Launch Alaska's grant, but rather of whether ONR provided a reason for doing so, this is not an issue of agency discretion.

### iii. APA Claim

Launch Alaska is likely to prevail on the merits of its claim that ONR violated the APA by acting in an arbitrary and capricious manner when it terminated the grant. (Doc. 8 at 8).

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (internal quotations omitted). Specifically, courts have jurisdiction to review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The "arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.*

In considering whether an action was arbitrary and capricious, a court must consider only whether the agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Dept. of Homeland Sec.*, 591 U.S. at 16. "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfr. Ass'n of the U.S., Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A Court may not "infer an agency's reasoning from mere silence." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). The Court has the equitable power to set aside agency action if the action was arbitrary, capricious, or

contrary to law. *Nw. Env't Def. Center v. Bonneville Power Admin.*, 477 F.3d 668, 680 (9th Cir. 2007).

Launch Alaska provides sufficient evidence to suggest that ONR's termination of its grant was done in an arbitrary and capricious manner. ONR argues that its actions were consistent with all applicable law and were neither arbitrary nor capricious. (Doc. 15 at 9). As evidence that ONR's decision to terminate was "reasonable and reasonably explained," ONR points to the sentence in its termination letter that states that the grant was "terminated in its entirety as it no longer effectuates the program goals or agency priorities as set forth in SECDEF MEMO dated March 20, 2025." (Doc. 15 at 15). Certainly, if that was in fact the reason for the termination, the executive branch is afforded much, if not complete, deference in making such determinations. However, ONR made no specific mention of Launch Alaska in the memorandum, which included many reasons for termination and presumably was intended to cancel many grants. In ONR's Decision on Appeal, ONR highlighted the provision of the Secretary of Defense Memorandum that terminated grants "in areas of Diversity, Equity, and Inclusion and related social programs, climate change, social science, Covid-19 pandemic response, and other areas," but, again, failed to consider any facts specific to Launch Alaska in concluding that Launch Alaska's grant was "not aligned with DoD priorities." (Doc. 8-7 at 2-3). Consequently, ONR failed to provide "a rational connection between any facts found," of which there were none, and "the choice made." *See Motor Vehicle Mfr. Ass'n of the U.S.*, 463 U.S. at 43. ONR accurately states that "the APA does not require ONR to maintain grants that no longer effectuates its priorities," (Doc. 15 at 14), but should ONR terminate a grant, it must do so "to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). Launch Alaska is likely to prevail on its assertion that ONR terminated its grant in violation of the APA.

### b. Irreparable Harm

The Court next considers whether Launch Alaska is likely to suffer irreparable harm in absence of injunctive relief. Plaintiffs seeking preliminary relief must "demonstrate that

irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). "[I]t is well-established that acts by Government agencies in derogation of statutory rights of the public or certain individual members of the public can constitute irreparable injury." *Kirwa v. U.S. Dep't of Def.*, 285 F.Supp.3d 21, 42 n.22 (D.D.C. Oct. 25, 2017) (quoting *Gates v. Schlesinger*, 366 F.Supp. 797, 800 (D.D.C. Oct. 10, 1973)). Here, Launch Alaska alleges facts sufficient to demonstrate that ONR likely terminated its grant in violation of federal statute and the APA, constituting irreparable injury. ONR's argument that this case is about funding and that appropriate recovery may be sought in the Court of Federal Claims, (*see* Doc. 15 at 16-17), fails to persuade.

Accordingly, Launch Alaska has shown a likelihood of irreparable harm.

### c. Balance of Equities and Public Interest

Finally, the Court considers whether the balance of equities tips in Launch Alaska's favor and whether injunctive relief is in the public interest. "[W]hen a party seeks a preliminary injunction against the government, as is the case here, the balance of the equities and public interest factors merge." *Chamber of Com. of the U.S. of America v. Bonta*, 62 F.4th 473 (9th Cir. 2023).

Here, should the Court issue an injunction, Launch Alaska would be in a position to maintain its grant subject to a lawful termination, bringing clarity to Launch Alaska and to individuals involved in Launch Alaska's research and programming. *See City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018) (holding that an injunction that brings clarity to the parties and citizens dependent on the services at issue is in the public interest). ONR asserts that should the grant be reinstated pending final resolution of the case, ONR would be unlikely to recover the grant funds once they are disbursed. (Doc. 15 at 17) (citing *California*, 145 S. Ct. at 969). However, unlike *California*, in which the respondents did not refute the government's representation that it was unlikely to recover

- 13 -
Case 3:25-cv-00141-GMS     Document 20     Filed 08/05/25     Page 13 of 15

dispersed grant funds, here, Launch Alaska notes that it "is only entitled to receive grant funds that comply with all eligibility requirements under the Grant Award's terms and conditions" and that "ONR must separately approve every invoice for payment." (Doc. 18 at 9). In fact, Launch Alaska acknowledges that "there is no chance that any future payments will be made to Launch Alaska without ONR's contemporaneous approval." (*Id.*). Further, unlike in *California*, Launch Alaska has not "represented in this litigation that they have the financial wherewithal to keep their programs running." *See California*, 145 S. Ct. at 969. Although ONR has rightly noted that the "public has an interest in the judiciary respecting the Executive Branch's ability to lawfully direct and guide agencies' spending decisions," (Doc. 15 at 18), Launch Alaska has demonstrated a likelihood of success on its claim that ONR did not act lawfully in terminating its grant. There is no public interest in the violation of federal law. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (holding that "it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law").

As such, the irreparable harms Launch Alaska faces in the absence of an injunction tip the balance of equities in its favor.

### d. Bond

Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Here, the likelihood of harm to ONR from enjoining its conduct is presumably low because neither party raised the issue in the briefing. Further, considering the limited scope of the injunction, the equities in this case favor no bond.

### e. Conclusion

At this stage of the proceedings, Launch Alaska has demonstrated that it has a

- 14 -
Case 3:25-cv-00141-GMS    Document 20    Filed 08/05/25    Page 14 of 15

likelihood of success on the merits of its APA claim, irreparable harm is probable absent a preliminary injunction, the balance of hardships tips in its favor, and injunctive relief is in the public's interest. Accordingly, Launch Alaska's Motion for a Preliminary Injunction (Doc. 8) is granted. ONR is preliminarily enjoined from treating Launch Alaska's grant as terminated. ONR is further preliminarily enjoined from future actions regarding Launch Alaska's grant unless it complies with the procedural requirements contained in 2 C.F.R. §§ 200.340(a)(4) and 200.341(a) and the APA.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Department of the Navy, Office of Naval Research's Motion to Dismiss (Doc. 15) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff Launch Alaska's Motion for a Preliminary Injunction (Doc. 8) is **granted**.

**IT IS FURTHER ORDERED** that Defendant Department of the Navy, Office of Naval Research is preliminarily enjoined from treating Plaintiff Launch Alaska's grant as terminated. Defendant is further preliminarily enjoined from future actions regarding Launch Alaska's grant unless it complies with the procedural requirements contained in 2 C.F.R. §§ 200.340(a)(4) and 200.341(a) and the APA.

Dated this 5th day of August, 2025.

_____
G. Murray Snow
Senior United States District Judge